[Civ. No. 3037.   Fourth Dist.   Dec. 14, 1942.]

JOSEPH L. BOYD, as Administrator With the Will Annexed, etc., Respondent, v. J. M. LANCASTER, Appellant.

Chapman & Chapman, John S. Chapman and J. O. Reavis for Appellant.

Edgar T. Fee for Respondent.

BARNARD, P. J.—This is an action originally filed through a guardian *ad litem* to set aside a deed by which Henry O. Boyd had conveyed 640 acres of land in Kern

County to J. M. Lancaster. The deed recited a consideration of $10. Among other things, the complaint alleged that at the date of the deed Boyd was of unsound mind and physically and mentally incapable of handling his business affairs. In his answer the defendant alleged that the deed had been given and accepted in full satisfaction of certain debts theretofore owed to him by the grantors. In a cross-complaint he sought to have his own title quieted. In the course of the trial an amendment to the complaint was filed in which the plaintiff offered to pay any amount found due to the appellant, with interest thereon.

Henry O. Boyd and his wife lived in Los Angeles and the defendant, who was engaged in the loan business, was their next door neighbor for many years. In November, 1929, the Boyd home was about to be sold under a trust deed and such sale was averted by means of a loan of $1,600 made to the Boyds by Lancaster and his partner, one Reid. As security for this loan the Boyds gave Reid a trust deed to the Kern County property here in question. Later, Lancaster and his partner advanced some $400 or $500 to Boyd and paid certain taxes on the Kern County land.

On October 18, 1931, Boyd and his wife executed and delivered a grant deed conveying the land in question to Lancaster, which recited a consideration of $10 and made no reference to the previous trust deed. Mrs. Boyd died two and a half years later. On April 19, 1935, an order was entered in the Superior Court of Los Angeles County declaring that Henry O. Boyd was incompetent and appointing one Barmann as guardian of his estate. On August 6, 1935, one Gove was appointed guardian *ad litem* for the purpose of bringing this action, which was filed on the same day.

On June 29, 1937, after a trial on the issues, the court signed and filed findings of fact and conclusions of law in which it was found that at the date of the deed Boyd was "a person of unsound mind, but not entirely without understanding"; that the consideration for the conveyance was grossly inadequate; that by reason of those facts the conveyance was voidable; that Lancaster had made certain advancements to Boyd; and that there was due and unpaid certain sums which, with interest thereon, amounted to $5,300.

As conclusions of law it was found that the property should be reconveyed to Boyd by Lancaster upon the payment of $5,300 within sixty days from and after July 1, 1937, and that if this amount was not paid title was to be quieted in Lancaster. Two appeals followed. (*Boyd* v. *Lancaster*, 32 Cal.App.2d 574 [90 P.2d 317]; *Boyd* v. *Lancaster*, 43 Cal. App.2d 161 [110 P.2d 532].) On the first of these appeals a judgment in favor of Lancaster was reversed on the ground that Henry O. Boyd had died before the judgment was entered and his administrator had not been substituted. On the other appeal a judgment in favor of Lancaster was reversed on the ground that the $5,300 which might be paid under the terms of the interlocutory order had been paid into court within the required time and the trial court was directed to enter judgment in favor of the plaintiff, with an appropriate order turning over the money deposited to the respondent. On July 9, 1941, judgment was entered as directed by this court, from which the defendant has taken this appeal. The right of the defendant to take and maintain this appeal was upheld in passing upon a motion to dismiss the appeal. (*Boyd* v. *Lancaster*, 53 Cal.App.2d 479 [128 P.2d 41].)

The appellant first contends that the evidence is not sufficient to support the finding of mental incapacity on the part of Henry O. Boyd at the time the deed was executed. The arguments advanced go to the weight of the evidence rather than to an entire absence thereof. The respondent's evidence on this issue takes up over 100 pages of the reporter's transcript. An attempt was made to examine Henry O. Boyd as a witness and the record in this regard amply discloses his incompetency at the time of the trial. The testimony of many witnesses as to Boyd's mental condition during the years 1932 to 1935, inclusive, would amply support the finding made if it related to any time within those years. While, as the appellant points out, these witnesses were not acquainted with Mr. Boyd in August, 1931, and knew nothing of his condition at that time, there was other evidence which not only disclosed a similar mental condition on the part of Boyd prior to 1932, but which amply justified the inference that his mental condition had not greatly changed during the four or five months immediately after the execution and

delivery of the deed in question. There was also direct evidence of his mental incompetence at and before the time in question.

One witness, a real estate agent, testified that he knew Mr. Boyd between 1922 and 1925, that Mr. Boyd's mind was failing as far back as the year 1923, and that by 1925 he was incompetent, for which reason the witness "quit doing business with him." Another witness, a neighbor, testified that she visited Boyd's home frequently between 1925 and 1930 and two or three times a day during 1930 and 1931; that Boyd was not right mentally; that he was of unsound mind; that she first knew that his mind was not sound prior to 1931 and that in 1931 "he was always very hazy"; and that you could tell from his conversation that he was unable to think. Another witness who had formerly been associated with Boyd in the real estate business and who had visited him frequently testified that Boyd first began to fail in 1923 and gradually became worse; that as far back as 1923 Boyd was so far deranged mentally that he refused to conduct business transactions with him; and that in 1925 he formed the opinion that Mr. Boyd was of unsound mind. When asked if his testimony was that Mr. Boyd "has been insane since 1925" he replied: "I would not say permanently insane, but on and off. He had hallucinations and an imaginary mind, one day maybe he would be all right and the next day he would be all wrong."

Another witness, who was employed by a title company, testified that he acted as escrow agent on November 23, 1929, at which time the appellant and his partner advanced the money to Boyd and took the trust deed on the Kern County land. He testified that he had known Mr. Boyd for years; that he had been gradually losing his mind since 1921; that he saw him frequently between 1921 and 1929; that he saw him more frequently between 1929 and 1932, sometimes as much as ten times a month; that from 1929 to 1932 Mr. Boyd visited his office very frequently; that the day before November 23, 1929, the appellant came to the witness' office and told him "that Mr. Boyd was like a child and unless something was done, he was going to lose his home; he said he and his neighbors were trying to get together to save the

home''; that when the loan was made and the trust deed given on November 23, 1929, Mr. Boyd ''just acted like a child; he did not seem to really realize what was going to happen to him; he did not seem to realize that his home was about to be foreclosed over his head, was making no effort whatever to protect himself; he had a child-like faith that everything would come along all right''; that ''he had no business ability whatsoever at that time, in my own estimation''; that at that time he acted like a man in a daze, acted just like a child and did what he was told to do, and that he ''looked sort of wild-eyed''; that early in 1931 the appellant called the witness on the telephone and said he was having a lot of trouble with Mr. Boyd, that Mr. Boyd had threatened him and that it was a very serious problem; that he saw Boyd frequently in 1931 and many times around February, 1932; that Boyd was completely broken at that time and had every indication he was a man with unsound reason; and that in 1932 Boyd would come to the witness' office ''and sit down, look around wild-eyed and not know what he came to see him for.'' Without further reviewing this witness' testimony it may be said that it amply supports the finding with respect to the mental condition of Mr. Boyd as of August, 1931, when the deed in question was executed. From the record as a whole, including the testimony to which we have referred, it cannot be held, as a matter of law, that the finding in question is without support in the evidence. The issue was one of fact for the trial court and the evidence, with the inferences which could reasonably be drawn therefrom, supports the finding made.

It is next argued that this action, having been brought by a guardian *ad litem*, is not maintainable because at the time the guardian *ad litem* was appointed and the action filed there was a general guardian, and that he alone was entitled to bring the suit. The only authority cited is *Loock* v. *Pioneer Title Ins. etc. Co.*, 4 Cal.App.2d 245 [40 P.2d 526], wherein a statement is made in the opinion to the effect that an action on behalf of a minor must be brought in the name of the minor by the guardian. An entirely different problem was there being considered. In the instant case, one Barmann was appointed guardian of the estate of Henry O. Boyd upon his petition in which he alleged, among other things,

that the said incompetent had no property standing in his own name but that he had a claim upon certain real property by reason of an insufficient consideration for the transfer thereof, and that the petitioner had consulted attorneys and been informed and believed that there was a good cause of action in favor of the incompetent for the recovery of the said real property. No such action was filed and on August 6, 1935, and shortly before the expiration of four years from the date of the deed in question, one Gove filed a petition for appointment as guardian *ad litem* alleging, among other things, that he believed that the general guardian was a close personal friend of J. M. Lancaster and that the appointment of a guardian *ad litem* was desired for the purpose of filing suit for the recovery of real property which had been conveyed to Lancaster on August 18, 1931. Gove was appointed guardian *ad litem* and authorized to commence proceedings immediately for and on behalf of Henry O. Boyd, as prayed for in the petition. No suit had been filed by the general guardian, time appeared to be an important element and the entire matter was one within the discretion of the court. Under the conditions which existed it would seem to have been highly proper to appoint a guardian *ad litem* to protect the interests of the incompetent. We find no reversible error in the procedure taken under these circumstances.

It is next urged that the respondent waived any right to rescind by not offering to restore what had been received prior to the filing of the action; that in any event the respondent knew that certain moneys had been advanced to Mr. Boyd by the appellant as early as December 20, 1935, since such facts were alleged in the answer which was served on that date; that no offer to restore was made until April, 1937, during the course of the trial, when permission to amend the complaint was asked and given; and that this delay in offering to restore constituted a waiver of any right of rescission. The appellant relies particularly on *Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287 [9 P.2d 819]. The facts in that case are entirely different from those here involved and the rule there announced has no application here. This is particularly true since the party in interest here had been adjudged to be incompetent, was found to have been incompetent at the time in question, and since the guardian *ad litem*

naturally did not know all of the facts. It would appear that at the time the action was filed the guardian *ad litem* believed that the evidence would show that Boyd was absolutely insane at the time in question. The guardian *ad litem* was under no obligation to accept as true the allegations of the answer and when the evidence disclosed that advances had actually been made the respondent promptly, with the permission of the court, amended the complaint and offered to restore what had been received with interest. This is not a rescission action, but one in equity to set aside a conveyance on the ground that the grantor did not have sufficient mentality to understand what he was doing at the time the grant was made. No waiver appears and the principles of equity are broad enough to cover such a situation. As the court said in *More* v. *More,* 133 Cal. 489 [65 P. 1044, 66 P. 76] :

"The rigid rules appealed to by the counsel apply only to rescission to be effected by the acts of the parties. The power of a court of equity to cancel a contract is of much wider scope, and its exercise is governed by other principles. The court may refuse to exercise the power, in certain cases, for failure of the injured party to avail himself of his right to rescind, but not in a case like this, where the injured party was unable to pay back the money, and his inability was the natural—and, as such, to be anticipated—result of the act of the defendants in advancing money to a person so irresponsible; where, also, the same influences that made it practicable to defraud him would deter him from seeking relief from the fraud. . . . "

It is further argued that Mrs. Boyd was a joint maker of this deed, that she had never made any effort to rescind, and that since this was community property she should have been joined as a party to the action or, after her death, her personal representative should have been made a party. Incidentally, it appears that Mrs. Boyd was ill, confined to a wheel chair and mentally unbalanced during most or all of the time in question. Regardless of that fact, this was community property, the husband had the management thereof, and she was dead long before this suit was filed and before the facts came to light. If it could be assumed that Mr. Boyd was not the sole owner of the chose in action at the time the suit was filed he had such an interest as would permit a suit to be maintained by him or on his behalf, and no possible defect

of parties in this regard would affect or injure the rights of the appellant.

It is next argued that the appellant is entitled to additional interest from the date of the interlocutory decree, June 29, 1937, to the date of the present judgment, July 9, 1941. The money was actually deposited with the clerk on June 14, 1939, and was available to the appellant from and after that date had he chosen to receive it. While interest might well have been allowed between June 29, 1937, and June 14, 1939, such was not the order of the court and the respondent's compliance with the court order within the time allowed, as extended, entitled him to a judgment on the exact terms of the interlocutory order. The entire matter was within the discretion of the trial court and no abuse of that discretion appears.

The last point raised is that this action was barred by the statutes of limitation and by laches. The action was filed on August 6, 1935, less than four years after the deed was obtained from the incompetent person. It was alleged and the evidence would have supported a finding that Boyd never recovered his mental powers sufficiently to have comprehended the situation and that the guardian *ad litem* first learned of the facts on July 25, 1935. It further appears that he did not learn all of the facts until the trial of the action. The appellant's contentions in this regard are without merit. (*Trubody* v. *Trubody,* 137 Cal. 172 [69 P. 968]; *Murphy* v. *Crowley,* 140 Cal. 141 [73 P. 820].)

The judgment appealed from is affirmed.

Marks, J., and Griffin, J., concurred.