[Civ. No. 15722. First Dist., Div. Two. May 19, 1954.]

Estate of JOHN A. COROTTO, Deceased. CATHERINE COROTTO et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Coexecutor, etc., et al., Respondents.

David E. Lombardi and Renzo Turco for Appellants.

James F. Boccardo, Edward J. Niland and Burnett & Burnett for Respondents.

KAUFMAN, J.—This is an appeal from a portion of an order settling first and final account of executors; order correcting and amending inventory and appraisement; order of allowance of compensation for extraordinary service rendered by attorneys for executor, Bank of America; order of allowance of compensation of guardian *ad litem*; and decree of final distribution entered on May 28, 1952. The coexecutor, Bank of America, was awarded $11,000 for extraordinary services, and the guardian *ad litem*, $7,500 for services rendered by him.

Decedent, John Corotto, a director of the Bank of America for many years, died in San Jose, California, on January 17, 1950. He was survived by his widow Catherine; his daughter, Genevieve Turco; two grandchildren, John E. Turco, Jr., and Maria Jane Turco. At the time of his death the grandson was 19 years of age, and the granddaughter, 16.

The estate, consisting of real estate, securities and other personal property was appraised for inheritance tax purposes at approximately $650,000. Respondent bank and decedent's daughter, Genevieve Turco, were appointed coexecutors of the estate. Catherine Corotto, named as coexecutor by the will, declined to act.

Decedent's will provided that all of the estate with the exception of $5,000 given in trust for the benefit of the grandchildren, should go to respondent and the widow as cotrustees in trust for the benefit of the widow, daughter and grandchildren. Trust income was to be paid to the widow for the remainder of her life, then to the daughter for the remainder of her life, then equally to the two grandchildren until the youngest should reach the age of 40 years. In event either grandchild should die before 40, leaving lawful issue, then the trust was to remain in effect until each such issue should reach the age of 21 years.

Decedent's family sought to have the entire trust declared invalid on the ground that it violated the rules against perpetuities and restraints of alienation, and asked that the property be distributed directly to the widow and daughter. Respondent bank resisted these objections and asked that the trust be upheld. After several hearings in the probate court, a settlement was reached under which it was agreed that the trust provisions would be considered valid except for the provisions continuing the trust in favor of the issue of the grandchildren. Decedent's estate was therefore distributed to respondent bank and decedent's daughter as cotrustees by

the decree of final distribution entered on May 28, 1952. The effort of the bank in upholding the validity of the trust is one of the matters for which it was awarded the fee for extraordinary services.

Another matter for which the fee for extraordinary services was allowed arose shortly after the administration of the estate was commenced. Half of the property in the estate was claimed by the widow to be her separate property as the result of an agreement which she and decedent had entered into in 1939 which purported to divide the community property equally between them. Respondent bank contended that the only effect of this agreement was to convert pre-1927 community property into post-1927 community property, and that all of the property remained community property. The widow contended that the agreement converted one-half of decedent's property into her separate property. She filed an action in superior court to quiet title to the property of the estate. The action was tried and judgment was rendered in favor of respondent bank as coexecutor. All of the property was adjudged to be community property. Burnett and Burnett, attorneys at law, represented the bank in this action.

The guardian *ad litem,* Alfred Aram, an attorney, who was awarded $7,500 for his services as guardian for Maria Jane Turco in the matter determining the validity of the trust was appointed at the request of respondent bank. On July 26, 1951, it asked the court to appoint such guardian for minor grandchildren and the issue not in being. The court took the matter under submission and on the following day made a minute order appointing Aram guardian *ad litem* for Maria Jane. The other grandchild was to become 21 years of age within a few days, hence no guardian was appointed for him. Nor was an appointment made for the issue not in being. The guardian, Aram, was not related in any way to the Corotto family. There was no written petition for the appointment of said guardian, and no written order was made, the only proceedings being the oral request of respondent bank and the minute order of the court. The ward, who was over 14 years of age did not nominate the guardian nor affirmatively approve the appointment. When the request for a guardian was made, Renzo Turco, as attorney for all members of the Corotto family, objected to the appointment as being unnecessary and improper, and not in accordance with required procedure. On July 27, he wrote a letter to the judge in support of his objections, but meanwhile

the minute order had been made. On September 7, 1951, a motion to vacate the appointment was made and denied.

On June 20, 1951, the executors filed their petition for the settlement of the first and final account, for the allowance of the compensation for extraordinary services by attorney for an executor and for final distribution. On the same date Messrs. Burnett and Burnett, attorneys for the bank, filed a separate petition for allowance of attorney's fees for extraordinary services. The petitions requested allowance of the fees for extraordinary services rendered to the coexecutor. Decedent's widow, his daughter and her husband, the father of the grandchildren as their natural guardian, joined in filing objections to the request for fees for extraordinary services. Burnett and Burnett filed a supplemental petition clarifying the first petition, and requesting compensation in the sum of $12,500. On October 1, 1951, Alfred Aram filed his petition for compensation with an affidavit in support thereof, asking $7,500 for his services.

On April 8, 1952, the court rendered an opinion that the requests were proper, and that $11,000 should be awarded to Messrs. Burnett and Burnett, and $7,500 to Alfred Aram. This decree of final distribution entered on May 28, 1952, ordered that fees in the amounts above stated be paid to said attorneys and the guardian *ad litem* out of funds of the estate.

*Appeal from Order Awarding Compensation to Attorney for Coexecutor*

Appellant contends that the services for which compensation was awarded were for the benefit of one side in a dispute between legatees under the will and that it is therefore not chargeable to the estate.

It is the theory of appellant that it was not the duty of the respondent bank as executor to step in and resist the claim of the widow to half of the assets of the estate in her quiet title suit. Appellant presents the issue here as a dispute by one legatee with the executor aligned on his side against all the members of decedent's family. If the widow succeeded, the $650,000 estate would be reduced by one-half. The trust for decedent's heirs would then consist of one-fourth of $650,000, rather than one-half.

Section 902 of the Probate Code provides that the probate court may allow fees for extraordinary services to the executor for "such other litigation or special services as may be necessary for the executor or administrator to prosecute, defend or perform." Appellant cites *Estate of Higgins*, 158 Cal.

355 [111 P. 8] ; *Estate of Hite,* 155 Cal. 448 [101 P. 448], and *Estate of Pryor,* 51 Cal.App.2d 735 [125 P.2d 511], as authority that the fees were improperly allowed. However, as pointed out by respondent these cases are not applicable to the situation herein. Here the will had already been admitted to probate without contest. The cited cases were all contests before probate. In the *Estate of Higgins, supra,* it was said that the executor is not bound to engage in litigation for the purpose of establishing the document offered by him for probate and that if he voluntarily assumes the burden of a contest properly belonging to the legatees or devisees, he must look to them for reimbursement. In *Estate of Pryor, supra,* it was considered that the contest, for which fees for extraordinary services were said to have been improperly allowed, was one in reality between individuals, and not such a contest as that which the statute allows to be defended at the expense of the estate. There, in a contest before probate, the executrix greatly benefited by receiving approximately one-third of the estate, while she would have received nothing if the contest had been upheld. *Estate of Friedman,* 176 Cal. 226 [168 P. 21], *Estate of Ross,* 179 Cal. 358 [182 P. 303], *Estate of Murphey,* 7 Cal.2d 712 [62 P.2d 374], and *Estate of Jessup,* 80 Cal. 625 [22 P. 260], cited by appellant, are likewise clearly distinguishable from the situation herein.

It is earnestly contended that the case of *Estate of Mc-Sweeney,* 107 Cal.App.2d 140 [236 P.2d 846], is parallel to the case now before this court. In the cited case the services were rendered in defense of a civil suit, *Ryan v. Welte,* instituted by one of the devisees under the will, against defendants both individually and as executors to impress a trust on properties left by decedent in favor of plaintiff, including properties which decedent had devised to the Weltes. Plaintiff also sought to impress a trust upon properties conveyed to the Weltes by decedent during his lifetime which were no part of the estate in probate. The court there stated that the suit "affected and bore upon the title of the devisees, legatees, and heirs of McSweeney to their respective portions of that residue and thus was of concern to them only in their individual capacities. The circumstance that two of them happened to be the executor and the executrix did not alter and should not obscure that fact. It follows that the cost of that litigation should be borne by them in their individual capacities."

The quiet title suit was, of course, not a contest of the

will after probate, but is an attempt to deprive the estate of one-half of its assets. It would appear that the respondent executor, not a legatee or devisee under the will, except as trustee for all of the heirs, had the duty to defend the corpus of the estate for the benefit of all the heirs against this attack. It is true that because the widow is also a beneficiary of the testamentary trust, she will be paying a share of these extraordinary expenses from her half of the community property and from her interest under the trust. But at least in her capacity as heir, she has been benefited by the executor's successful defense of the suit.

In the quiet title action herein, no heirs, legatees or devisees were joined as defendants. Summons were served on respondent bank. The basis of the suit was a written contract between plaintiff and decedent. Section 573 provides that actions for recovery of any property or for possession thereof or to quiet title thereto may be maintained by and against executors and administrators in all cases in which the same might have been maintained against their respective testators or intestates. In 11B California Jurisprudence 818, it is said that it is the duty of the executor to "defend against unjust and illegal attacks which affect the interests of the estate, heirs, devisees, legatees or creditors . . . He is especially entrusted with the duty and power to defend the rights of all beneficiaries until distribution."

In *Estate of Dunton*, 15 Cal.App.2d 729 [60 P.2d 159], it is pointed out that it is the duty of the executor, after a will has been admitted to probate, to defend and uphold it against subsequent attack, and that this duty rests primarily upon him and not upon the legatees and devisees. Respondent maintains that it was therefore its duty as executor to defend the trust against the attack on its validity since in effect this was an attack upon the will, as the decedent's entire community half of the estate with the exception of $5,000, was left in trust. We agree that it was the duty of the executor to defend the will and the trust set up therein and to resist the quiet title suit.

Appellant argues that respondent bank acted in the capacity of trustee and not as executor, in defending the validity of the trust, and that the compensation for such services cannot be assessed against the estate. If awarded against the estate, the widow's one-half interest in the estate as distinguished from her interest in the trust, will bear one-half of the fees allowed for this service. In *Firebaugh* v. *Burbank*,

121 Cal. 186 [53 P. 560], where the executors and testamentary trustees were identical, as here, the court held that the executors could not charge the estate defending a decree of distribution against an appeal therefrom, since the estate had been distributed to them as trustees, and their defense of the decree would be made by them as such distributees, and not as executors. This case is not in point here because, in the present case, the defense of the trust was made by the executor prior to the distribution to respondent executor as cotrustee. Respondent points out that by upholding the trust no further federal estate taxes or state inheritance taxes may be imposed upon the deaths of the widow or Mrs. Turco, or either of the grandchildren if they die before reaching 40 years of age.

*Estate of Duffill,* 188 Cal. 536, 554 [206 P. 42], makes it very clear that it is the duty of the trustee to uphold the validity of the trust in this type of situation. In that case extraordinary fees of $75,000 to the attorneys for their work in upholding the trust where the estate was valued at approximately $1,000,000, was held to be large, but not excessive. In the Duffill case the property was distributed to the trustee who had also been the executor, on September 20, 1919, pursuant to the terms of the decree of distribution. On February 20, 1920, the trustee filed its first account and report in which it requested the $75,000 for attorney fees for services performed in upholding the trust against the objections filed to the distribution in accordance with the will, by one of the beneficiaries of the trust. Respondent herein concedes that in the cited case the compensation was allowed out of the trust but it must be noted that the trustee while acting as executor never requested compensation of the court.

 However, in view of the fact that the executor preserved one-half of such a large estate, and in view of the other work shown to have been performed for the direct benefit of the estate, the compensation asked does not appear to be excessive for all the work performed on behalf of the executor and it is properly allowable out of the estate.

### *Appeal from Order Awarding Compensation to Guardian ad Litem*

Appellant contends that the Probate Court was without power to appoint a guardian since there is no statutory provision giving such power to this court, and that furthermore the appointment was unnecessary. Probate proceedings

are statutory, and although the superior court is general in its jurisdiction, it is circumscribed in probate cases by the statutes conferring such jurisdiction, and cannot proceed in a manner other than provided. (*Estate of Wise,* 34 Cal.2d 376, 381 [210 P.2d 497].) There is no statutory provision in the Probate Code conferring power on the probate court to appoint a guardian ad litem. ▉ Such a guardian is provided for in sections 372 and 373 of the Code of Civil Procedure. Because those sections refer to the infant as a "party" throughout, and to "actions," it is argued that it is obvious the sections cannot apply in probate. The language of section 372 is, however, "A guardian ad litem may be appointed in *any* case, when it is deemed by the court in which the action *or proceeding* is prosecuted, . . . expedient to represent the infant."

Appellant cites *Carpenter* v. *Superior Court,* 75 Cal. 596 [19 P. 174], as holding that section 372, Code of Civil Procedure, does not apply to probate proceedings, but admits that the case was decided at a time when section 1718 of the Code of Civil Procedure was in effect which authorized the probate court to appoint an attorney to represent a minor heir. Section 1718 was repealed in 1903. Respondent points out that *Estate of Carpenter* merely held that section 1718 providing for representation of minors was intended to be exclusive. Since its repeal such representation is not otherwise provided. It is admitted that in *Estate of Snowball,* 156 Cal. 235 [104 P. 446], it is stated that section 372 applies to probate proceedings, but the language is dictum since the court said that it was there immaterial whether a guardian *ad litem* was appointed and that the proof of the order was harmless.

Section 1401 of the Probate Code provides that a general guardian is a guardian of the person or of the general estate of the ward, while every other guardian is a special guardian. This section would indicate that the probate court has inherent power to appoint such guardians "other" than general guardians. It is not to be presumed that this language is meaningless.

Sections 1230-1233, Probate Code, make applicable to some probate proceedings the rules of practice in civil actions set forth in part II, Code of Civil Procedure. Section 1233 refers not alone to "trials," but to "all other matters of procedure." (See *O'Day* v. *Superior Court,* 18 Cal.2d 540 [116 P.2d 621].)

Section 1607, Probate Code, provides that "The provisions of this division do not limit the power of any court to appoint

a guardian ad litem to protect the interests of any minor or insane or incompetent person in an action or proceeding pending therein.''

Respondent cites numerous cases wherein various sections of the Code of Civil Procedure have been held applicable to probate proceedings. (*O'Day* v. *Superior Court, supra*; *Estate of Morrison*, 125 Cal.App. 504 [14 P.2d 102]; *Estate of Baker*, 170 Cal. 578 [150 P. 989]; *Voyce* v. *Superior Court*, 20 Cal.2d 479 [127 P.2d 536]; *Lilienkamp* v. *Superior Court*, 14 Cal.2d 293 [93 P.2d 1008]; *Estate of Kratz*, 192 Cal. 494 [221 P. 340].) There is no good reason why sections 372 and 373 do not so apply when section 373.5, Code of Civil Procedure, has been held applicable. (*Estate of Weymouth*, 118 Cal.App.2d 505 [258 P.2d 34].) Appellant cites other cases where part II of the Code of Civil Procedure does not apply to civil cases. (*Estate of Van Deusen*, 30 Cal.2d 285 [182 P.2d 565]; *Estate of Franklin*, 133 Cal. 584 [65 P. 1081]; *In re Sanderson*, 74 Cal. 199 [15 P. 753].)

Appellant maintains that in any event, the statutory requirements for appointment of a guardian *ad litem* were not met, since the minor was over 14 years of age and did not apply for the appointment of such guardian. Section 373, Code of Civil Procedure, provides that ''When the infant is defendant, upon the application of the infant, if he be of the age of fourteen years, *and apply within ten days after the service of summons,* . . . or if he neglect so to apply, then upon the application of a relative or friend of the infant, or of any other party to the action, or by the court on its own motion.'' (Emphasis ours.) ▉ Here the minor failed to apply within ten days after exceptions to the petition for distribution were filed. This proceeding was adversary to the minor, since if the attack of her family on the trust had been successful, she would not have received the benefits of the trust provided for her by her grandfather. The court could therefore appoint a guardain to safeguard these interests in the proceeding, when her natural guardian, her father, would not do so. (*Boyd* v. *Lancaster*, 56 Cal.App.2d 103, 108-109 [132 P.2d 214].)

There is no merit in the contention that *Johnston* v. *Southern Pac. Co.*, 150 Cal. 535, 538-540 [89 P. 348, 11 Ann.Cas. 841], is applicable, for in that case the minor was the plaintiff, and in such case the application for the appointment must be made, apparently in every case, by the infant if over 14 years.

■■ An order appointing a guardian *ad litem* is not appealable (*In re Hathaway*, 111 Cal. 270 [43 P. 754]) and the minor herein cannot disaffirm the settlement made on her behalf by the guardian since it is now incorporated in the decree of distribution which has become final. (*Estate of Loring*, 29 Cal.2d 423 [175 P.2d 524] ; Code Civ. Proc., § 1908.)

■ Appellant maintains that since the respondent bank was also cotrustee as well as executor, it represented the minor in upholding the validity of the trust, and the work of the guardian *ad litem* was unnecessary, and a duplication. It was the trustee's duty to defend the trust. (*Estate of Duffill*, 188 Cal. 536, 555 [206 P. 42].) Respondent contends that as executor, it must maintain a neutral position between beneficiaries in any controversy (*Estate of Kessler*, 32 Cal.2d 367, 369 [196 P.2d 559] ; *Estate of Lynn*, 109 Cal.App.2d 468 [240 P.2d 1001]) and could not therefore represent Maria Turco. Nor could it properly represent her as cotrustee, for when there is a conflict of interest between beneficiaries, it is well settled that all beneficiaries are entitled to individual representation. (*Hutchins* v. *Security Trust & Sav. Bank*, 208 Cal. 463, 467 [281 P. 1026, 65 A.L.R. 1059] ; *Bernstein* v. *Equitable Discount Corp.*, 8 Cal.App.2d 265, 269 [47 P.2d 518].)

It is contended that the compensation of a guardian *ad litem* cannot be made out of the estate and that such expense cannot be included under section 300, Probate Code, which provides for payment of expenses of administration, debts of decedent and family allowance. ■ Expenses of a legatee in establishing his interest in an estate have never been allowed as an expense of administration. (*In re Stuttmeister*, 75 Cal. 346 [17 P. 223] ; *Estate of Feldman*, 78 Cal.App.2d 778, 795 [178 P.2d 498].) If chargeable to anyone, such expenses should be charged to the ward, it is suggested.

Respondent argues that although ordinarily, compensation for legal services should be paid by the person for whom they are rendered, an exception exists where the services have preserved or increased a common fund for the benefit of all those interested in such fund, and on this basis the fees asked by the guardian herein may be legally paid out of the corpus of the trust. (*Estate of Reade*, 31 Cal.2d 669, 671 [191 P.2d 745] ; *Winslow* v. *Harold G. Ferguson Corp.*, 25 Cal.2d 274 [153 P.2d 714] ; *Estate of Lundell*, 107 Cal.App.2d 463 [237 P.2d 62].)

However, the court ordered it paid out of the estate, not out of the corpus of the trust. Respondent attempts to justify this by an argument that it was within the discretionary power of the probate court under section 1232 in allowing costs. There is no statutory definition of costs in California. (*City of Los Angeles* v. *Vickers*, 81 Cal.App. 737, 740 [254 P. 687]; 7 Cal.Jur. 280, § 21.) Where the guardian who acts as an officer of the court is also an attorney, it is urged that where his legal services are necessary, his compensation should be taxed as one of the costs of the proceedings. Respondent cites *Hoffman* v. *Morgan*, 266 Okla. 567 [245 P.2d 67, 30 A.L.R.2d 1141], as authority that guardian *ad litem* fees may be assessed as costs. Appellant notes that in the Hoffman case because it was a quiet title suit, the appointment was absolutely necessary, and furthermore the minor defendant therein had no assets out of which to pay the fees. *Estate of Olmstead*, 120 Cal. 447 [52 P. 804], held that attorneys' fees were not "costs" within the meaning of section 1720, Code of Civil Procedure, now section 1232, Probate Code.

It is finally contended that the award is excessive, $7,500 for 20-2/3 days of legal work. However we need not pass on this contention because it is our view that the lower court had no authority to make its order for allowance of fees to the guardian out of the estate.

In our opinion the probate court was without authority to allow fees to the guardian *ad litem* out of the estate, when one-half of the estate is no part of the trust.

Guardianship expenses and fees should only be paid out of the ward's estate or out of funds due and payable directly to the ward. Other heirs and legatees cannot be called upon to pay guardian fees for services for the benefit of the ward.

We conclude that the order allowing compensation to the guardian *ad litem* must be reversed and all other orders appealed from affirmed.

Order allowing compensation to guardian *ad litem* reversed; all other orders appealed from affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 18, 1954, and respondent's (Aram) petition for a hearing by the Supreme Court was denied July 14, 1954. Carter, J., was of the opinion that the petition should be granted.