[Civ. No. 21991.   Second Dist., Div. One.   Sept. 10, 1957.]

Estate of JOSEPH C. POISL, Deceased. THOMAS W. HUGHES, Appellant, v. ROBERT L. FERGUSON, as Executor, etc., et al., Defendants; EMMA POISL, Respondent.

Thomas W. Hughes, in pro. per., and Alfred L. Bartlett for Appellant.

Ben M. Kochman for Respondent.

DRAPEAU, J. pro tem.*—Joseph C. Poisl made his last will December 10, 1950. He left a home in San Diego and its furnishings to a long-time friend, Emma Blackburn. He left the rest of his estate to nieces and nephews.

Mr. Poisl and Emma Blackburn were married in July of 1951.

Mr. Poisl died in June of 1952.

But he did not make a new will after his marriage.

The estate was appraised at $105,000; the property willed to the wife was appraised at $11,800.

Mrs. Poisl filed a petition to revoke the will, under section 70 of the Probate Code.

The probate court decided in favor of the will; the District Court of Appeal affirmed the decision; but the Supreme Court of California reversed it. (*Estate of Poisl,* 44 Cal.2d 147 [280 P.2d 789].)

Thomas W. Hughes, Esq. appeared as attorney for the executor in all the courts named, and opposed the petition to revoke the will.

After the final decision in the Supreme Court, Mr. Hughes filed his petition in the probate court for extraordinary fees to compensate for these services. He alleged that they were reasonably worth $10,500. Proof in the probate court sustains this allegation. Indeed, there was no proof to the contrary. This court is bound to say that in its opinion, considering the time spent and the services rendered, the bill was fair and reasonable. And this court is also bound to say that from the beginning to the end Mr. Hughes conducted himself in the utmost good faith, and presented the case to the courts in a lawyer-like manner.

But the probate court allowed Mr. Hughes only $1,000, upon the ground that it was the executor's duty to bring the

---

*Assigned by Chairman of Judicial Council.

contesting parties into court, but that it was not his duty to go further in opposition to the widow's petition.

In a memorandum of opinion in the record, the probate judge states his conclusions as follows:

"The law is well settled that it is the duty of the executor to defend a will after it has been admitted to probate and no question is raised herein on that point.

"It is also well settled that an executor has no duty to participate actively in any proceeding to determine succession of the estate. (Citing *Estate of Julius Friedman,* 176 Cal. 226 [168 P. 21].)

"The questions involved in this matter are:

"1. Is the proceeding for the revocation of the will under section 70 of the Probate Code such a contest of the will that places a duty upon the executor to defend the same?

"2. If the petition under section 70 is not a contest of the will but a petition to determine a right of succession, is the executor entitled to extraordinary fees for his attorney?

"Sections 371 and 380 of the Probate Code provide the grounds for which a contest of a will may be made. No such grounds were asserted in the proceedings for which extraordinary fees are sought. The petition under section 70 of the Probate Code simply sought to revoke the will as far as the interest of the spouse is concerned. This petition is not unlike a petition to hold invalid the provisions of a will attempting to leave the estate to charity where legal heirs exist.

.    .    .    .    .    .    .    .    .    .    .    .    .

"In the case at bar the attorney for the executor undertook to associate himself with and in effect represent one group of claimants against another."

Mr. Hughes appeals from the order, and argues:

1. The law required the executor to defend the will.

2. The contest filed by the widow was upon a proper statutory ground as to the validity of the will.

3. The widow is estopped by the judicial record from asserting that the proceeding was one to determine heirship.

The law as stated by our Supreme Court in two cases apparently conclusively bars appellant's claim: *Estate of Friedman,* 176 Cal. 226 [168 P. 21]; and *Estate of Murphey,* 7 Cal. 2d 712 [62 P.2d 374].

In the Friedman case a number of claimants as heirs brought a proceeding under section 1664 of the Code of Civil Procedure

for a decree determining their rights to the estate. The probate court denied the application of attorneys for the executors for extraordinary fees for services in trying the case. ▮ Affirming the order, the Supreme Court said (at pp. 228-229):

"It is no part of the duty of the executor to participate actively in a proceeding under section 1664, to ascertain and determine the succession to the estate. That proceeding may be begun by any person claiming to be entitled to distribution of all or any part of such estate. All opposing claimants must be made parties to the proceeding. The executor or administrator is required to be named in the petition and process must accordingly be served upon him, but he has no interest in the question to be determined. No answer is required to be filed by him. He has no claim which he can set up in opposition to those of the rival claimants for the estate, and his name is inserted as a party solely for the purpose of giving him information of the proceeding, so that he may be advised as to the judgment therein given, and of the pendency of the proceeding itself. As far as he is concerned, it is in the nature of a notice of *lis pendens*. It follows therefore, that he has no authority as executor to engage attorneys for either claimant to the estate, or to bind the estate in any manner to pay for services rendered in that behalf. . . .

"The necessary result is that the court has no power to allow compensation out of the estate for services rendered in assisting one of the parties to the succession proceedings in establishing its claim, even if the executors employed them to render such service. . . . They cannot obtain an allowance out of the property of the estate for such services."

In the Murphey case the Supreme Court said (at p. 716):

"Appeals are also taken from that portion of the decree denying attorney's fees to the lawyer who was employed by the executor, after the filing of the final account and petition for distribution. The executor says that he proceeded upon the theory that various legatees, . . . were charitable organizations; that when he discovered a different contention was being advanced he felt called upon to, and did, employ counsel to assist him. The court so found, but refused to make an allowance, evidently upon the theory that the services so rendered were not in aid of any duty owed by the executor to the estate. And we are in accord with the conclusion. (Citing *Estate of Friedman*, 176 Cal. 226 [168 P. 21].)"

And in the Murphey case, after commenting upon the Friedman case, the Supreme Court also said (pp. 716-717):

"In principle that case cannot be distinguished from the situation here, where it appears that the only services rendered by counsel were in endeavoring to advance the position of appellant as to the manner in which the estate should be distributed. (Citing cases.)

"By the same process of reasoning we arrive at the conclusion that the executor was not a party aggrieved by the decree of distribution, and, therefore, not entitled to prosecute this appeal (citing cases)."

Mr. Hughes relies upon the rule applied in *Estate of Corotto,* 125 Cal.App.2d 314 [270 P.2d 498].

In that case the executor defended an attempt by Mr. Corotto's family to have a trust set up in his will declared invalid. He also defended a demand by the widow for one-half of the estate, based upon a property agreement between her and her deceased husband.

The District Court of Appeal decided that the executor's lawyers were entitled to fees for defending the case because the contest was not between individuals, and came within that part of section 902 of the Probate Code which reads: "such other litigation or special services as may be necessary for the executor or administrator to prosecute, defend, or perform."

It is true as Mr. Hughes points out, that in the case at bar the pleadings, the court, and the parties all call it a "contest" of the will. He earnestly argues that this evidences the nature of the case; that it was in reality a contest of the will; and that, therefore, the executor had not only the power, but it was his duty, to employ counsel and to oppose the widow's petition.

But this court cannot escape the conclusion that, looking beyond whatever name the parties called it, this contest determined rights of decedent's heir, his widow, and rights of his other heirs, nieces and nephews; and thus it comes within the principle stated in the Friedman and Murphey cases. The word "contest" as used in legal probate terminology does not mean solely a contest of a will. It means any justiciable controversy submitted to the courts for determination.

It is true, as Mr. Hughes also points out, that the facts in the Friedman and in the Murphey cases are not exactly the same as here.

In the Friedman case, after a will was held invalid as to two-thirds of the probate estate the courts were called upon

to determine the rights of persons as heirs in and to that portion of the probate estate not subject to distribution.

In the Murphey case the legal services were in reference to a petition for distribution.

But we think the principle—the legal yardstick—to be used for decision here is the same.

Therefore, this court has come to the conclusion that the law stated in the Friedman and in the Murphey cases is binding upon us and controls this appeal.

The judgment is affirmed.

White, P. J., concurred.

FOURT, J.—I concur in the judgment but I cannot agree with the majority statement of the court that "considering the time spent and the services rendered, the bill was fair and reasonable."

The appellant knew or should have known that under the law, as pointed out in this opinion, it was not his duty to go as far as he did go in the litigation. He had no duty to participate actively in determining the succession of the estate, and it is undoubtedly in that phase of the case that he expended the most of his time and effort for which he now seeks over $10,000 in fees. In other words, he took sides in a matter in which he should not have done so. Had the motion to dismiss the appeal been granted, as I believe it should have been, this cause would have been disposed of long since and at least two opinions, one in the Supreme Court and this one, would not have been necessary.

A petition for a rehearing was denied October 8, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1957.