[Civ. No. 2131.   Fourth Appellate District.—January 6, 1938.]

BARBARA M. HITCH, a Minor, etc., Appellant, v. ANNA C. HITCH, Respondent.

H. E. Thompson and Harold King for Appellant.

C. O. Thompson for Respondent.

BARNARD, P. J.—This is an action to quiet the title to and obtain possession of a house and lot in San Bernardino. The plaintiff, a granddaughter of one John W. Hitch, resides in Omaha with her grandmother, who was formerly the wife of John W. Hitch. The defendant is the widow of John W. Hitch, having married him on September 30, 1925. A few months after their marriage the defendant left Hitch and came to California. Several years later Hitch came to California and he and the defendant lived together, except for some months when he was in a hospital, until his death which occurred on March 28, 1935. He purchased the real property in question with his separate funds on April 10, 1929. It was thereafter used as a family home and the widow is still in possession. In his will, dated June 18, 1929, John W. Hitch made no mention of this property but left $200 "to Anna C. Hitch, (wife), (in name only)" and gave the remainder of his estate equally to a son, a daughter, and this plaintiff.

On August 7, 1930, John W. Hitch executed and acknowledged a deed conveying this property to the plaintiff, which deed recites that the "premises, and all of it, is conveyed subject to an estate for life reserved by the grantor, John W. Hitch, unto himself, as his individual property for life". On July 31, 1933, John W. Hitch recorded this deed and instructed the recorder to forward the same, when recorded, to the plaintiff at Omaha. This was done and the plaintiff in due time received the deed from the recorder. A month later John W. Hitch wrote to his son in Omaha asking to have the recorded deed sent to him. This was done and after Hitch's death this deed was found in a locked chest in his room, sealed in an envelope addressed to the plaintiff at Omaha and with 39 cents in uncanceled postage stamps attached. Aside from any possible interest in this real property John W. Hitch left personal property which, in probate proceedings, was appraised at about $2,200 and set apart to the widow.

In this action which followed the court found that this deed had been delivered with the intent to convey title to the plaintiff and ordered judgment in her favor. After a motion for a new trial these findings were set aside and the case reopened

for further evidence. After a further hearing similar findings were again made and judgment ordered in favor of the plaintiff. These findings were also set aside and another hearing ordered, after which the court found that at the time of recording said deed John W. Hitch intended to retain the title to the property so long as he lived and entered judgment canceling the deed and denying any relief to the plaintiff, from which judgment the plaintiff has appealed.

There can be no question that this deed was recorded and actually delivered to the appellant. The only question presented is whether the grantor, at the time he recorded the deed and ordered it sent to the appellant, intended to divest himself of title to the property, except for a life estate, or whether he intended that the deed should have no effect until his death occurred. ■ While delivery of a deed to a grantee is necessarily absolute (sec. 1056, Civ. Code), a question may remain as to whether there has been such a delivery with the intent to transfer title. (*Hotaling* v. *Hotaling,* 193 Cal. 368 [224 Pac. 455, 56 A. L. R. 734].) In that case the court said:

" 'It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended to divest himself of title. If he did, there was effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely upon the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question.' "

■ Under well-settled rules the recording and manual delivery of a deed to a grantee gives rise to a presumption of an intent to pass the title and the burden then rests upon one attacking the validity of such a deed to establish by satisfactory evidence that there was no intention on the part of the grantor to divest himself of title. If deeds which have been recorded and physically delivered to the grantee could be overthrown by slight testimony the door would be opened to grave frauds and very clear proof ought to be and is required in order to warrant a court in holding that when such acts

were performed by a grantor he did not intend to part with his title. (*Mowry* v. *Heney,* 86 Cal. 471 [25 Pac. 17] ; *Jennings* v. *Jennings,* 104 Cal. 150 [37 Pac. 794] ; *Mitchell* v. *Ryan,* 3 Ohio St. 377.) ▮ The real question before us is whether under these general rules there is substantial evidence in this record to overcome the evidence and presumptions in favor of the validity of this deed and to support the finding that this grantor intended to retain title to this property so long as he lived.

Certain other evidence must be considered which is almost entirely documentary in nature. On the day he recorded the deed John W. Hitch mailed a letter to the appellant enclosing a postoffice registry receipt, which he said was for an envelope containing "papers with reference to the deed of my property to you" and telling her not to open the registered envelope until she had word of his death. He also stated that he had on that day delivered for record a deed which would shortly be sent her by the county recorder and that he enclosed the recorder's receipt which she should hold until she received the deed from the recorder. He then said: "I shall pay this years taxes on the property and any taxes thereafter may accrue until my death, so if notices of taxes for next year should be sent to you to the assessor of this county just remail to me and I will pay the taxes for you from my own funds. The property remains mine until my death so there will be no expenses to you until after my demise. Do not listen to any pleas (my wife) Anna may make to being entitled to her one half. Do not give in without a court fight. She never has and never will be a wife to me. So ignore her in any move she or her attorney might make to you. Were it not for her inhumane treatment to me I would be a well person to-day, but her constant insults to me and my relatives has preyed on my health, so that I am down and out and don't expect or desire to live much longer." The remainder of the letter warns the appellant about what the respondent might try to do and tells her to consult a named attorney if necessary to put the appellant out of the property after his death. In another letter written to the appellant about the same time John W. Hitch tells her that he is enclosing "various papers pertaining to my home here, and which I have deeded to you at my death" and that the deed to the property is in the hands of the county

recorder and when recorded will be mailed direct to her. In this letter he tells the appellant that there may also be coming to her through his last will, other property, and also states "I have decided upon this disposition of my property after many many months of study. You will perhaps wonder why I did not give it to my wife, or my own children, your Aunt Elsie, and Uncle Walter. Reason for not so doing is because all of them have been unfaithful to me in many ways, and caring nothing for my welfare, happiness, etc." There is evidence that John W. Hitch paid the taxes on the property until the date of his death; that he applied for and was granted a soldier's exemption on taxes for several years, stating in his affidavit that the property was owned by him on the first Monday of March of the respective years; that he kept the house insured; and that in an application for hospital care he made affidavit that the property belonged to him or his wife. On August 21, 1933, while he was in a government hospital in San Francisco, he wrote to the respondent, stating "I now desire to do what is right toward you in a worldly way, and ask you in love and confidence what do you expect and believe is rightfully due, you can express yourself freely, feeling nothing you will say will make me angry so speak openly and from the heart, and I will assure you your words and wishes will be thought over carefully and prayerfully and I believe we can arrive at a just solution of the matter. In your consideration of this matter don't wholly forget my children." In a letter to her dated August 26, 1933, he said: "Got your letters of 23rd and 24th, in re property settlement, and as soon as able will take necessary steps to make everything right." In another letter, dated August 29th of that year, he said: "I fear sometimes when you know all you will curse me and tell me to go out and die."

The respondent contends that the letters referring to a property settlement indicate that John W. Hitch was still of the opinion that he was the owner of the property and that these letters, with his actions in requesting the return of the deed a month after it was delivered, in paying the taxes on the property and making affidavits that he was the owner thereof, and in stating in the two letters to the appellant, written about the time the deed was recorded, that "the property remains mine until my death" and "Herewith en-

closed are various papers to my home here and which I have deeded to you at my death," are sufficient to overcome any evidence and presumptions in favor of the deed and to sustain the finding of the court that there was no intention to pass title. ■ It may first be observed that the paying of taxes and keeping up the insurance was entirely consistent with the life estate which was reserved. (*Merritt* v. *Rey,* 104 Cal. App. 700 [286 Pac. 510] ; *Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191].) The affidavits for the purpose of securing exemptions from taxes are also consistent with this theory as, in any event, the grantor owned a life estate in the property and was under the duty to take care of the taxes. In the letters of August 21 and August 26, 1933, referring to a property settlement, no reference was made to this real property. Mr. Hitch still possessed considerable personal property and the fact that he desired a property settlement with the respondent with whom, as the evidence shows, he had been having much difficulty, is far from sufficient to indicate that he intended to use the property which he had already conveyed to the appellant in making any such settlement. It is somewhat significant in this connection that in asking the respondent what she expected he asked her to show consideration for his children but made no reference to his granddaughter, the appellant. It may well be that this was because he considered that she had already been taken care of.

We have here clear and distinct evidence, which cannot be disputed, that this deed was recorded and actually delivered to the appellant, facts which ordinarily indicate a full and complete delivery. If any doubt as to the intention of the grantor at the time the deed was recorded and ordered sent to the appellant arises from the letters he wrote to her at that time, that doubt is removed and the matter clarified by the reservation· made in the deed which clearly discloses the intention of the grantor. If he did not intend the deed to take effect until his death there was no possible reason for reserving a life estate. That part of the instrument should be given effect and it could have none if the grantor was divesting himself of no part of the title prior to his death. The deed contains within itself rather complete proof of a specific intention to make a present conveyance subject to a life estate which was reserved. To allow any

other conclusion to be drawn from the acts of the grantor would be to ignore and annul this definite provision of the deed.

The record does not disclose why the grantor later asked to have the recorded deed sent to him. Subsequently, he placed it in an envelope addressed to the appellant, with postage paid, and locked it up. If his action in this regard and his subsequent letters to the respondent with reference to a property settlement in any way indicate that he then believed that the property was subject to his disposal, they are much more consistent with the theory that he had changed his mind than with the idea that in executing a deed in that form he had not intended to convey any title at the time.

In our opinion there is no evidence which is sufficiently substantial to sustain a finding that this grantor had no intention of passing title when this deed was recorded. The security of real property rights requires that a solemn instrument of this nature should not be set aside on such slight evidence as, at best, appears in this record.

For the reasons given the judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 7, 1938.