[Civ. No. 5291.   Fourth Dist.   Dec. 6, 1956.]

Estate of ALFRED C. HELVEY, Deceased. EVA TAYLOR, as Administratrix, etc., Appellant, v. EDNA M. HELVEY, Respondent.

William Morris Taylor for Appellant.

Jesse E. Jacobson and Harry B. Cannon for Respondent.

GRIFFIN, J.—The deceased, A. C. Helvey, who specialized in obtaining title to property at tax sales, etc., was married to K. F. Helvey. They were close friends to William M. Taylor, his attorney, who appeared for him in many actions in which decrees of title were secured under some partnership agreement or arrangement whereby Taylor would subsequently take an interest in the property acquired. Often times actions were maintained in the name of K. F. Helvey. She died after she executed a general grant deed conveying to A. C. Helvey all interest she had in any real property in the state. He, there-

after, made a will dated April 28, 1950, naming Father Weinig executor and leaving his real and personal property to Maymie Hoffman. He and attorney Taylor continued operations in securing title to real property. Subsequently, he married Edna C. Helvey and did not change his will naming her as a beneficiary. He continued to file similar actions in her name as well as his own. On December 29, 1952, he executed a general grant deed of all his interest in any real property in California to her. His wife now claims it was never delivered to her but was placed among his papers and was not found until after his death which occurred as a result of an automobile accident in November, 1953. She testified that after the funeral she sent his box of papers to her advisor and attorney for her husband, Mr. Taylor, who was familiar with his affairs and he later telephoned her he had discovered this general grant deed and told her about it, and that he had it recorded in the several counties in the state where her husband had real property interests. Taylor testified that Edna gave him the general grant deed and said: ''Al gave it to me'' and wanted to know what to do with it and he advised her to record it.

On December 16, 1953, Taylor prepared some form of agreement between himself and Edna Helvey. It recited that she was the sole heir of Al Helvey; that Taylor and Helvey were partners ''in many parcels of land and actions,'' and to adjust them Eva Taylor would act as administrator with the will annexed and Taylor would act as attorney for the estate and he would waive his ordinary fee; that it was agreed that Edna Helvey and William Taylor each owned an undivided one-half interest in certain described property and owned a one-half interest in all real property or claims thereto in California standing in A. C. Helvey's name and which belonged to him. He agreed that if he sold certain of those properties he would pay her 10 per cent of the sums realized from such sales. On January 5, 1954, Edna conveyed to Taylor her one-half interest in certain described real property. On March 23, 1954, she signed a grant deed to Taylor, for services rendered and to be rendered, of all real property she owned in California with certain specific exceptions. Edna Helvey claimed that he represented to her that all these properties, not excepted, were of doubtful title and value and it would take considerable legal work to secure any title to them. They involved between 25,000 and 30,000 acres of forest lands, oil and gas leases, reversionary rights in Santa

Ana Line of Pacific Electric Railway Company, and many other parcels of real estate in several counties of the State. He produced in evidence an unacknowledged and unrecorded grant deed to him dated August 17, 1915, from A. C. Helvey of a one-half interest in certain of those properties. On January 12, 1955, the administratrix presented her final account and petition for distribution showing $3,436.26 in cash that came into her hands less certain claimed credits including statutory attorneys' and administratrix's fees, leaving a balance of $2,934.96 for distribution.

Edna M. Helvey, through her then attorney, filed objections to the hearing of the final account and petition alleging that it had come to her attention that through the collusion with her husband William M. Taylor, the administratrix concealed numerous assets belonging to said estate, consisting of parcels of real estate in several different counties, and that she failed to include them in the inventory or final account. She prayed that the hearing on that matter be continued until further investigation could be made to ascertain the facts. Apparently she had employed her then attorney under a 40 per cent recovery contract. He continued his investigation of the records in these several counties to ascertain the true facts.

Eva Taylor, as administratrix, answered the charge, denied generally these allegations, and alleged that on December 29, 1952, A. C. Helvey made and executed a general grant deed conveying all of his real property to his wife; that this deed was exhibited to the administratrix and it appeared regular upon its face; that she believed it had been duly delivered to Helvey's wife during his lifetime and had been duly recorded in the several counties; that said deed conveyed to her all the right, title and interest of A. C. Helvey in his real property and that she believed Helvey thereafter had no real property to list as part of the assets of his estate; and that there was no record of him acquiring any real property since the execution of that deed. She then listed the real property which she believed was owned by A. C. Helvey separately or held jointly with William M. Taylor or others and set out the agreement and assignment and grant deeds by Edna M. Helvey to William Taylor above mentioned. She stated that Edna Helvey did not point out any real property that she claims should be inventoried in said estate but in fact permitted certain portions of it to be sold under the general grant deed and accepted payments on it. She further alleged

that Edna Helvey never before claimed that the general grant deed to her had not been, in fact, delivered to her by her husband during his lifetime.

Objection was made that the probate court had no jurisdiction to determine title standing of record or claimed by third persons. Considerable evidence was introduced indicating the record title of considerable real property did stand in decedent's name prior to the date of the general deed. The court found generally that the general deed, dated December 29, 1952, from A. C. Helvey to Edna M. Helvey, was never delivered to her with intention to pass title and accordingly was invalid and a nullity and therefore it was true that all the real property and interest included therein remains a part of the assets of the estate and the administratrix was directed to account for it in the estate. Judgment was entered accordingly. The administratrix appealed.

Numerous claims are raised, including estoppel on the part of Edna Helvey to raise the defense that there had been no delivery of the general grant deed because of the conveyance of certain properties under it and the acceptance of money from payments due thereon; that objector failed to prove the existence of real property belonging to said estate; that the objections filed presented no issue as to the delivery of the general grant deed and if so the probate court had no jurisdiction to determine its validity in this proceeding.

Assuming the invalidity of the general grant deed, if established in a proper proceeding, there is sufficient evidence to show that there would be certain real property belonging to said estate which was unlisted and for which the administratrix did not account.

The jurisdiction of the probate court, when the controversy as to ownership of property is between a representative of the estate and the estate, indicates it has jurisdiction to determine the validity of claims of ownership. (*Estate of Bruck*, 140 Cal.App. 300 [35 P.2d 431].) But it is an established principle of law that a probate court is without jurisdiction to try title to property as between a representative of the estate and a stranger to it.

In *Merola* v. *Superior Court*, 125 Cal.App.2d 1 [269 P.2d 664], it was held that Probate Code, sections 613-615, relating to proceedings for discovery of property, create no exception to this rule, and that a widow who claims that certain property is her sole property as a result of its having been given to her by her deceased husband during his lifetime, claims as a

stranger to the estate and therefore the probate court cannot try title to such property as between her and the executor. To the same effect is *Ex Parte Casey,* 71 Cal. 269 [12 P. 118]; *Koerber* v. *Superior Court,* 57 Cal.App. 31 [206 P. 496]; *Miers* v. *Betterton,* 18 Tex.Civ.App. 430 [45 S.W. 430]; and West's Annotated California Codes, volume 53, page 268, Probate Code, section 613, and cases cited.

Here the title to the real property is directly in issue, depending on the validity of the general grant deed. Acting under that deed, Edna Helvey granted her interest in the property to Attorney Taylor, who now holds record title. It appears that there was other property disposed of to innocent purchasers for value and for which Edna Helvey was receiving payments. These parties certainly were interested parties and were not made parties to these probate proceedings.

We conclude that the probate court, upon such a summary proceeding as that taken here, may be justified in postponing the hearing on the petition for approval of the account until the title to the real property involved is determined, but it had no jurisdiction to try and determine the title to said real property and render a judgment which would, in effect, defeat the title of those claiming an interest in the property, particularly where they were not made parties to the proceeding. It therefore becomes unnecessary to determine the other questions raised.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.