[Civ. Nos. 20378, 20922. First Dist., Div. One. Feb. 17, 1964.]

Estate of LULU PIEPER, Deceased. DANIEL N. VUC-KAN, Plaintiff and Respondent, v. LIONEL EDGAR McCORMICK, as Executor, etc., Defendant and Appellant; WILLIAM H. MEYER, as Administrator, etc., Distributee and Respondent.

(Two Cases.)

John M. Burnett, Victor A. Chargin and George A. Strong for Defendant and Appellant.

Rowland R. King, Rankin, Oneal, Luckhardt, Center, Longinotti & Ingram and Maurice J. Rankin for Distributee and Respondent.

Leon L. Flam for Plaintiff and Respondent.

MOLINARI, J.—These are two consolidated appeals arising out of the same case and the same probate proceedings in the court below. The first appeal (No. 20378) is by A. Leroy Parkinson,[1] individually, and as administrator of the Estate of Lulu E. Pieper,[2] from a decision and order entitled "Memorandum Decision," filed on May 5, 1961. The second appeal (No. 20922) is by the same appellant and is from the judgment made on March 16, 1962, and entered on March 30, 1962.

The procedural background of these appeals is as follows: A hearing was had in the court below, sitting in probate, pursuant to a petition brought by one Daniel N. Vuckan, as an assignee of one of decedent's heirs, for the removal of Parkinson as the administrator of the estate of said decedent. Upon the submission of the cause, the trial court made and filed its "Memorandum Decision" on May 5, 1961, wherein it announced its decision that Parkinson be removed as administrator, and that a certain deed from the decedent to Parkinson was invalid because it was not legally delivered

---

[1]Hereinafter referred to as "Parkinson."
[2]Hereinafter referred to as the "decedent."

and was void as a testamentary disposition. On June 30, 1961, Parkinson filed a notice of appeal from said "Memorandum Decision." The preparation of findings of fact and conclusions of law was not directed in said "Memorandum Decision," nor were they requested by either of the parties. Subsequently it was apparently determined that such findings were necessary, and, accordingly, on February 28, 1962, the trial court made and signed its findings of fact and conclusions of law. These were filed on March 5, 1962, and judgment pursuant thereto was filed and entered on March 16, 1962. The second appeal is from this judgment, which ordered and adjudged that Parkinson be removed as administrator, and that the deed in question, purportedly executed by the decedent to Parkinson, was void and of no effect. In its findings, the trial court found that there was no delivery of said deed and that it was void as a testamentary disposition.[3] Although the second appeal purports to be from the whole of said judgment, the appeal, as conceded by appellant in his brief, is only from the finding that the deed was not delivered.

The first appeal was premature because it was not taken from an appealable order designated in Probate Code section 1240. A "Memorandum Decision" is not an appealable order because it is neither a judgment nor a decision of the court, but merely an announcement of the court's intended decision. (*Department of Social Welfare* v. *Machado*, 98 Cal.App.2d 364, 366 [220 P.2d 411]; *Haynes* v. *Buckley*, 165 Cal.App.2d 96, 101 [331 P.2d 693]; *Oldis* v. *La Societe Francaise*, 130 Cal.App.2d 461, 472 [279 P.2d 184]; *DeCou* v. *Howell*, 190 Cal. 741, 751 [214 P. 444]; 3 Witkin, Cal. Procedure, § 2, pp. 1872-1873; § 20, pp. 2163-2164; Code Civ Proc., § 632; sec Cal. Rules of Court, rule 232.) The "Memorandum Decision," in the instant case, was not entered as a judgment either by the clerk or by the court, but was merely a preliminary order authorizing the subsequent judgment and therefore not appealable. (*Fox* v. *Fox*, 127 Cal.App.2d 253, 254-255 [273 P.2d 585]; *Butler* v. *City & County of San Francisco*, 104 Cal.App.2d 126, 128 [231 P.2d 75].) It follows that the attempted appeal from the "Memorandum Decision," i.e., the first appeal, must be dismissed. Accordingly, the appeal before us is the second one, i.e., the

---

[3]This is the same deed referred to in the aforesaid "Memorandum Decision."

676

appeal from the judgment.[4] The specific questions raised by this appeal are hereinafter set out in the headings of this opinion, and the evidence pertinent to each question will be discussed under such heading.

### Was the Issue of the Deed's Delivery Raised by the Pleadings, and was it Litigated?

 Yes. In his petition for the issuance of a citation for the removal of Parkinson as administrator the petitioner alleged, among other grounds, that Parkinson claimed an adverse interest in property of the estate and asserted in support thereof that a deed of gift from decedent to Parkinson, dated May 7, 1946, and recorded on August 21, 1946, a copy of which is attached to the petition, was a spurious and forged document, the validity of which was questioned but could not be determined so long as Parkinson remained as administrator. It was further alleged in said petition that at the date said deed was purportedly executed the decedent was totally incompetent to comprehend its meaning and nature. Said petition prayed only that a citation be issued directing Parkinson to show cause why his letters should not be revoked. In his answer to said petition Parkinson stated, among other averments, as follows: "Answering ... said petition this respondent admits that on or about the 7th day of May, 1946 Lulu E. Pieper made, executed and delivered to this respondent deed of gift, and that said deed of gift was

---

[4]Said decedent died intestate, leaving as her heirs four first cousins, to wit: The said A. Leroy Parkinson, Annie H. Johnson, Fred E. Baker, and Carrie O. Baker. All are now deceased.

Parkinson died since the commencement of this appeal and Lionel Edgar McCormick, as executor of Parkinson's Last Will and Testament, has been herein substituted in the place and stead of Parkinson, individually and as administrator of the Estate of Lulu Pieper, deceased. Said executor will be hereinafter referred to as the "appellant."

Eleanor J. Hodge is a daughter and only heir of Annie H. Johnson. Mrs. Hodge assigned one-half of her distributive share in the estate of said decedent to Daniel N. Vuckan, who brought the petition for Parkinson's removal which resulted in the judgment which is the subject of this appeal. Although Vuckan was the prevailing party in the court below, he has not filed a brief on this appeal. By leave of court, William H. Meyer, Public Administrator of the County of Santa Clara, as administrator of the estates of said Fred E. Baker and Carrie O. Baker, has filed a brief in support of the judgment. Accordingly, we shall consider Daniel N. Vuckan, Eleanor J. Hodge, and said Public Administrator as the interested parties who seek to sustain the judgment and shall hereinafter refer to them collectively as the "respondents." When referred to in his individual capacity, Vuckan shall be hereinafter designated as the "petitioner."

filed for record in the Office of the County Recorder of the County of Santa Clara on the 21st day of August, 1946 ... and that a correct copy of said deed is attached to said petition; . . ." The said answer further denied petitioner's allegations concerning the validity and sufficiency of said deed and alleged "that said deed of gift was a true and valid deed; . . ." At the hearing, considerable testimony, the particulars of which we shall hereinafter detail in this opinion, was adduced concerning the execution and purported delivery of said deed. The findings of fact made by the trial court, after the cause was finally submitted to it for decision, found that Parkinson, as administrator, "has long delayed the closing of said estate" and also found that Parkinson "adversely claims all of the real and personal property of the decedent" as the result of a deed which was not delivered from the decedent to Parkinson as required by law. From such findings the trial court concluded that Parkinson should be removed as administrator of decedent's estate, and that said deed was void because it was not "legally delivered" to Parkinson during the lifetime of decedent and for the further reason that it was invalid as a testamentary disposition.

The record discloses that in his opening statement counsel for petitioner indicated to the trial court that he did not intend to try the title to the properties covered by the deed in question, but that he was proceeding on the basis of his petition to remove Parkinson for incompetency, neglect, for delay in administering the estate, and because of a "definite conflict of interest between the administrator and those persons who are entitled to take under the estate by virtue of the fact that certain property was appropriated by the administrator as property of his own." When queried by the court in connection with the latter contention, petitioner's counsel alluded to the deed in question and indicated that some evidence would be adduced tending to show that it was recorded by one Gladys McCormick after decedent's death, and not by Parkinson, that Miss McCormick had pleaded guilty to certain charges of forgery and grand theft, and that, although he had not seen the deed because it was not made available to him, he would attempt to show that it was a forgery. Petitioner's counsel also then stated that "even if the signatures were good there is still the great possibility there was never any delivery of this deed whatsoever." Appellant's counsel, in turn, asserted that the deed in question was valid and that the real property conveyed thereby belonged to Parkinson and not to decedent's estate.

Upon the conclusion of these opening statements the hearing commenced and consumed approximately five days of testimony. Among the witnesses called to testify were Parkinson and Gladys McCormick, who prepared the deed in question. These witnesses were examined and cross-examined at length, and in considerable detail, concerning the circumstances surrounding the execution and recordation of said deed and its purported delivery, and the relationship between decedent and Parkinson. Towards the conclusion of the hearing, and in colloquy between the trial court and respective counsel, petitioner's counsel maintained that his position was that the deed was a spurious instrument, that it was forged, that it had never been delivered, and that, accordingly, there were adverse claims to the property, purportedly conveyed by said deed, by both the estate and Parkinson which would have to be determined by the court in a subsequent proceeding. It was his position that while title could not be then tried there was ample evidence to disclose an adverse interest in Parkinson requiring his removal as administrator. Appellant's counsel, on the other hand, contended that because Parkinson was not a stranger to the estate the trial court, sitting in probate, did have jurisdiction to try title to the property in question. The trial court made no comment with respect to these contentions, and, when both sides rested, directed that the parties submit briefs.[5] In his opening brief, petitioner's counsel contended that the deed in question was void and of no effect, that it was forged, that it was not delivered as required by law, and cited points and authorities in support thereof. Said brief concludes with the following language: "[Y]our petitioner prays that the respondent-administrator be removed and the deed dated May 7, 1946 be decreed void ...." In the reply brief appellant's counsel argued that the deed was properly delivered, that it was valid in all respects, and urged that "having seen fit to raise the title to that property in this proceeding,[6] the Court should find that Mr. Parkinson is the owner of all of the property described in the deed with the exception of the bank accounts and the stocks that he has chosen to inventory." Appellant's said brief concluded with the following language: "We respectfully submit that we are entitled to an adjudication that the deed was valid and that there is no ground to remove Mr.

---

[5]It was ordered that the cause was to be submitted upon receipt of the final brief.

[6]Obviously referring to "petitioner."

Parkinson on account of the deed." Again, in petitioner's closing brief he concludes: "Petitioner respectfully submits that he is entitled to an adjudication that the deed of May 7, 1946 was invalid and void. . . ." Thereafter, the trial court made its memorandum decision, findings of fact and conclusions of law, and the judgment aforesaid.

Notwithstanding the foregoing, appellant now contends that the issue of the validity of the deed, and particularly the question of its delivery, was not raised by the pleadings nor was it litigated, and that therefore the court was not entitled to make any findings on this issue. It is apparent that when the proceedings were first initiated by petitioner, he only sought thereby to remove Parkinson, urging, as a ground for such removal, that the deed, pursuant to which Parkinson claimed the property in question, was spurious and forged. It is likewise apparent from the petition and the proceedings during the course of the hearing that petitioner was under the impression and belief that he could not try the validity of the deed in the removal proceedings, but that if he was there able to show that such validity was questionable, the administrator should be removed so as to facilitate the trial of the issue with respect to such invalidity at a subsequent proceeding. Appellant, on the other hand, took the opposite position and asserted that such issue could and should be then tried.

It should be noted that although petitioner attacked the validity of the deed only on the ground that it was a forgery and spurious on its face, appellant's answer not only denied this allegation, but alleged that the deed was valid, and in this respect asserted that the deed was made, executed and delivered by decedent to Parkinson as a "deed of gift." Appellant characterizes this statement in the answer as an admission for the purposes of showing ownership of the assets in himself. Suffice it to say, while the assertion of delivery came by way of an admission, it was still an affirmative allegation of delivery made for the purpose of avoiding the allegations of invalidity made by the petition. Such allegation of delivery was, accordingly, an affirmative averment deemed controverted by the provisions of section 462 of the Code of Civil Procedure.[7] (See *Drinkwater* v. *Hollar*, 6 Cal. App. 117, 120-121 [91 P. 664].)

---

[7]Code Civ. Proc. § 462, in pertinent part, provides as follows: "[T]he statement of any new matter in the answer in avoidance or constituting a defense or counterclaim, must, on the trial, be deemed controverted by the opposite party."

We are satisfied that the validity of the deed, including the question of its delivery, were issues actually raised by the pleadings, notwithstanding petitioner's initial contention that they were not. Moreover, during the course of the trial and prior to the submission of the cause for decision the respective parties not only requested the trial court to determine these issues, but extensively argued in their briefs the evidence and law applicable thereto. ▮ It is well settled that where the parties and the court proceed during the trial upon a theory that a certain issue is presented for adjudication, the doctrine of estoppel precludes either party from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings. (*Miller v. Peters*, 37 Cal.2d 89, 93 [230 P.2d 803]; *Northwestern Mut. Fire Assn.* v. *Pacific Wharf & Storage Co.*, 187 Cal. 38, 40 [200 P. 934]; *Baar* v. *Smith*, 201 Cal. 87, 98 [255 P. 827]: *McAllister* v. *Union Indemnity Co.* 2 Cal.2d 457, 459-460 [32 P.2d 650, 42 P.2d 305]; *People* v. *Lucas*, 155 Cal.App. 2d 1, 5 [317 P.2d 104].) ▮ Accordingly, under the circumstances, appellant is estopped from urging on this appeal that the issue as to the validity of the deed was not litigated in the proceedings before the court below. (*Northwestern Mut. Fire Assn.* v. *Pacific Wharf & Storage Co., supra*, p. 40; *McAllister* v. *Union Indemnity Co., supra*, at pp. 459-460; *Baar* v. *Smith, supra*, at p. 98.)

*Did the Trial Court Sitting in Probate Have Jurisdiction to Determine the Validity of the Deed in Question?*

▮ *Yes.* During the course of the trial appellant properly urged that the trial court sitting in probate had the power to adjudicate the validity of the deed as between the estate and Parkinson. He now contends, however, that the probate court, by declaring the deed in question void and of no effect, determined title as between the estate and strangers thereto and therefore exceeded its jurisdiction. The basis for this assertion is Parkinson's testimony that he obtained a total of 11 separate parcels of land under said deed and that prior to the trial he had sold all except 3 of said parcels. Accordingly, appellant argues that the probate court's adjudication affects the title and interest of persons who now own or hold title to said parcels so conveyed and who were not parties to the instant proceedings, but strangers thereto.

▮ The applicable principle of law is stated as follows: The superior court, while sitting in probate, is without power to decide a disputed claim between an estate and a stranger

thereto; but if the controversy is between an estate and those not strangers to probate proceedings relating to the estate, the court has power to entertain the action and adjudicate conflicting claims. (*Central Bank* v. *Superior Court,* 45 Cal. 2d 10, 14 [285 P.2d 906]; *Schlyen* v. *Schlyen,* 43 Cal.2d 361, 372 [273 P.2d 897]; *Schecter* v. *Superior Court,* 49 Cal.2d 3, 8-9 [314 P.2d 10]; *Estate of Dabney,* 37 Cal.2d 672, 676 [234 P.2d 962]; *Estate of Helvey,* 146 Cal.App.2d 662, 665 [303 P.2d 1076].) ▮ Accordingly, it is established that when title to property of an estate is claimed by heirs or other beneficiaries of the estate to belong to the estate, and is also claimed by the representative of the estate to belong to him in his individual capacity, the superior court sitting in probate has jurisdiction over the controversy. (*Schlyen* v. *Schlyen, supra,* at p. 372; *Estate of Helvey, supra,* at p. 665.) ▮ Applying this rule to the instant case, we find that the controversy here is not between the estate or the representative of the estate and a stranger or strangers to it, but between parties in privity with the estate, i.e., between the representative of the estate and an assignee of an heir of the estate. The distributive rights of such assignee are affected by the proceeding in probate. Therefore, if the personal representative is improperly claiming property to which the estate is entitled the court may try the issue and surcharge his account for purposes of distribution. (See *Schlyen* v. *Schlyen, supra,* p. 373.) Moreover, the judgment in the probate proceedings is "conclusive against all persons interested in the estate. . . ." (Prob. Code, § 931; *Schlyen* v. *Schlyen, supra,* p. 373.) The judgment in the present case did not purport to adjudicate title as between the estate and a stranger to it or between the representative of the estate and such stranger, but to determine the validity of the claims of ownership as between parties in privity with the estate.[8] The question of the adjudication of any controversies between the estate and strangers was not inquired into by the court be-

---

[8]The judgment in the instant case, in pertinent part, reads as follows: "That the certain Deed dated May 17, 1946 and recorded August 21, 1946 in Volume 1329, Page 118 of Official Records in the Office of the County Recorder of the County of Santa Clara, purportedly executed by Lulu E. Pieper, as Grantor, and A. Leroy Parkinson, as Grantee, *is void and of no effect,* and of that, any property acquired by the Grantee thereunder is the property of the estate of said decedent, and that said A. Leroy Parkinson, has *not now or* [*sic*] *at any time had any right, title or interest in and to said property, real or personal, therein referred to.*" (Italics added.)

low. Such adjudication would be the function of the superior court in the exercise of its general jurisdiction. (*Schlyen* v. *Schlyen, supra,* at p. 373.)

*Was There Substantial Evidence to Support the Trial Court's Finding That the Deed Was Not Delivered?*

 *Yes.* At the hearing considerable evidence was adduced as to decedent's and Parkinson's backgrounds, their acquaintance since 1893, their close relationship both socially and in business, Parkinson's financial assistance to decedent, and his many gifts to her, including gifts of large sums of money, and, on one occasion, a gift of a parcel of realty.

Gladys McCormick, a close friend of both the decedent and Parkinson, and the owner of a real estate company founded by decedent's brother, testified that she acted as agent for the decedent and handled her affairs. She testified that decedent had discussed the matter of conveying her property to Parkinson on several occasions; that on the afternoon of May 7, 1946, she prepared the subject deed in her office in decedent's presence and at the latter's request; that decedent signed it in her presence and in the presence of a Mr. Gibhardt; that she notarized the deed and gave it to decedent; that at the time of the preparation and execution of the deed she explained to decedent that she was thereby giving everything to Parkinson and that she would no longer possess anything at all, to which decedent replied " 'I know, and that's just exactly what I want done' "; that the deed was executed prior to Parkinson's arrival at her office; that Parkinson arrived shortly after the execution of the deed; that he apologized for being late, to which decedent replied: " 'That's all right, here's the deed, I have for you a deed of gift. It's your birthday present. It covers everything that I have' "; that Parkinson was somewhat hesitant about accepting it; that he took the deed and thanked her for it; that he asked her if she was sure she knew what she was doing and she replied " 'Yes. . . .' "

Parkinson testified that on the afternoon of May 7, 1946, he went to the Wesley Pieper Real Estate Office with the intention of meeting decedent to take her out for dinner; that when he arrived decedent and a Mr. Gibhardt were there; that decedent gave him the deed, kissed him and said: " 'Well, this is your birthday present, something that we have talked about many times. . . . I want you to take it and keep it as my lifetime gift to you' "; that after he got the deed he placed it in his safe at the Pieper Real Estate Office

where he maintained a private office; and that shortly thereafter he put the deed in his safety deposit box at the bank where it remained until it was recorded. Parkinson testified further as follows: That prior to the execution of said deed he and decedent had had numerous discussions over a long period of time regarding the conveyance of her property to him; that she had stated she wanted him to have some compensation for all he had done for her over the past years; that decedent did not place any conditions on the gift and that it was her intention that he have everything at the time she gave him the deed; that ''[i]n regards to the May deed, I told her that I would not record it at the time she gave it to me ... because ... I told her she could have the use of everything while she was alive''; that it was their understanding that ''she had the use ... and enjoyment of everything she had'' for her lifetime; that ''she would not be disturbed in any particular''; and that ''there would be no change in her use of it''; that he had told decedent several times that he had not recorded the deed because ''I told her at the time she gave it to me that I would give it to her; in case anything happened to me, why, things would stay as they were''; that in case he passed away before decedent there wouldn't be ''any encumbrance upon her property,'' it being his intention that under such circumstances ''the property would belong to her''; that in case anything happened to him the property ''naturally'' would go back to her; that this was decedent's ''proposition''; and that ''she was pleased with the idea.''

The record discloses further that on July 19, 1946, decedent was in an automobile accident, which resulted in her hospitalization. Parkinson visited her at the hospital late in the afternoon of the same day. Gladys McCormick was there when he arrived. Decedent inquired of Parkinson whether he had recorded the deed as yet and he informed her that he had not. Decedent then stated: '' 'Well, ... I'm going to have Gladys write a new one, because I'm afraid you lost it, and I'm afraid you won't—you can't find it or do something with it, so I want to make a new one.' '' Miss McCormick then returned to her office where she prepared a deed and later returned to the hospital with it. Parkinson had, in the meantime, left the hospital, and upon his return, Miss McCormick was there with the deed. Decedent, being unable to place her signature on the deed because she was right handed and her right side was bandaged, signed it by making her mark with

an "X." The deed was witnessed by a Christian Hansen and Miss McCormick, and was notarized by the latter. Decedent then handed the deed to Parkinson. Parkinson testified that the deed had been signed prior to the time he returned to the hospital.

Decedent died on July 24, 1946. She did not leave a will. At Parkinson's request, Mr. Gibhardt recorded the deed of May 7, 1946, on August 21, 1946. Parkinson testified that he recorded the May deed rather than the July deed because it was "better," stating that the former was the one that decedent had "contemplated for a long time" before she gave it to him, and also because at the time she signed the May deed she was able to sign her full name. The deed in question, i.e., the May deed, particularly described four parcels of real property and also contained the following omnibus clause, to wit: "All other property both real and personal, owned by me in the State of California, including all bank accounts, stocks and bonds, promissory notes and trust deeds, furniture and jewelry."

The sufficiency of the foregoing evidence must be tested in the light of certain well-established legal principles, consonant with the elementary rule that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusions reached by the trial judge. ▉ The fundamental rule applicable to the delivery of a deed is well stated in *Henneberry* v. *Henneberry*, 164 Cal.App.2d 125, 129 [330 P.2d 250], as follows: "In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent on the part of the grantor to divest himself presently of the title. ▉ Even if the document is manually delivered, but the evidence shows that the parties or the grantor intended the document to become operative only upon death, the document is testamentary in character and void as a deed." ▉ Accordingly, delivery or absence of delivery is a question of fact to be determined by the trial court. (*Blackburn* v. *Drake,* 211 Cal.App.2d 806, 811 [27 Cal.Rptr. 651]; *Condencia* v. *Nelson,* 187 Cal.App.2d 300, 302 [9 Cal.Rptr. 759].) ▉ An

essential element of delivery is the intent to pass title, and this question is likewise one of fact to be determined by the trier of fact upon all of the circumstances surrounding the transaction. (*Blackburn* v. *Drake, supra,* at p. 811; *Obranovich* v. *Stiller,* 220 Cal.App.2d 205, 207-208 [34 Cal.Rptr. 923].)

Other principles applicable to the case at bench are the following: Possession of a deed by the grantee gives rise to an inference that the instrument was duly delivered (*Blackburn* v. *Drake, supra,* pp. 812-813; *Miller* v. *Jansen,* 21 Cal.2d 473, 477 [132 P.2d 801]); while recordation is not essential to the validity of a deed and the failure to record in and of itself does not vitiate delivery or the intent to make a present transfer, the failure to record until after the death of the grantor is a circumstance for the court to consider with the other circumstances surrounding the transaction in ascertaining whether the grantor intended the deed to be presently operative (*Blackburn* v. *Drake, supra,* p. 814; *Estate of Galvin,* 114 Cal.App.2d 354, 363 [250 P.2d 333]); the exercise of acts of ownership or dominion by the grantor, as well as the absence of such acts on the part of the grantee, are evidentiary circumstances for the trial court's consideration on the question of delivery or nondelivery. (*Blackburn* v. *Drake, supra,* pp. 817-818.)

Turning to the case at bench, the possession by Parkinson of the deed in question raised an inference of delivery. Appellant, relying upon *Stewart* v. *Silva,* 192 Cal. 405 [221 P. 191], contends that there was a presumption, rather than an inference, of delivery. In *Blackburn,* we had occasion to review the California authorities on the question of whether possession of a deed raises a presumption or an inference of delivery. We there pointed out that the confusion apparently stems from the interpretation of section 1055 of the Civil Code, which provides that ''A grant duly executed is presumed to have been delivered at its date,'' and we further indicated that the applicable principle was clarified by *Miller,* which held that the presumption created by this section applied only to the date and not to the fact of delivery, i.e., that a *delivered* instrument is presumed to have been delivered on the date it bears. Accordingly, we held in *Blackburn,* under the authority of *Miller,* that possession by the grantee of a deed gives rise to an inference, rather than a presumption that the instrument was duly delivered. Such inference is rebuttable, and in the face of con-

trary evidence becomes a consideration of fact for the trial court. (*Blackburn* v. *Drake, supra,* at p. 813; *Jones* v. *Jones,* 183 Cal.App.2d 468, 472 [6 Cal.Rptr. 819]; *Hennelly* v. *Bank of America,* 102 Cal.App.2d 754, 758 [228 P.2d 79].)

In the present case, the evidence for the trial court's consideration rebutting the inference of delivery is found in the following circumstances: The failure by Parkinson to record the deed until after decedent's death; decedent's continued occupancy of her home until the time of her death; and the evidence tending to establish that the parties intended the deed to be operative only on decedent's death. While the record is barren of any other evidence disclosing acts of dominion or control by decedent over the property deeded, other than the occupancy of her home, and while such evidence in and of itself would not vitiate delivery or the intent to make a present transfer (see *Stewart* v. *Silva, supra,* p. 410; *Knudson* v. *Adams,* 137 Cal.App. 261 [30 P.2d 608]; *Severn* v. *Ruhde,* 58 Cal.App.2d 704 [137 P.2d 466]), such occupancy was a circumstance to be considered with the other circumstances surrounding the transaction to be weighed by the trier of fact against the inference of delivery. (*Blackburn* v. *Drake, supra,* at p. 813; *Estate of Galvin, supra,* 114 Cal.App.2d 354, 363.) With respect to the evidence tending to show that the parties intended the instrument in question to be testamentary in character, there is ample evidence in the record from which the trial court could draw the inference that the parties did not intend to presently transfer title by the manual tradition of the instrument in question on May 7, 1946. Parkinson's testimony is clearly susceptible of the inference that there existed a mutual intention on the part of the decedent and himself that the title to the property, purported to be conveyed by the deed in question, would pass upon decedent's death provided Parkinson survived her. The inference that decedent did not intend to make a present transfer of title on May 7, 1946, is further bolstered by decedent's conduct on July 19, 1946, when she executed the second deed to Parkinson, and his acceptance and retention of it. Such conduct is incompatible with the assertion that when the deed of May 7, 1946, was executed the minds of the parties to it met, expressly or tacitly, in the purpose of presently transferring title to the property in question unhampered by the reservation of a right of revocation or recall.

Appellant relies upon the rule, which finds statutory sup-

port in section 1056 of the Civil Code,[9] that an unconditional grant deed made, executed and delivered by the grantor to the grantee, though with the intent that it should operate as a conveyance only in the event of the death of the grantor, takes effect immediately to pass title to the grantee. (See *Bias* v. *Reed*, 169 Cal. 33, 43-45 [145 P. 516]; *Tyler* v. *Currier*, 147 Cal. 31 [81 P. 319]; *Hammond* v. *McCollough*, 159 Cal. 639 [115 P. 216]; *Mowry* v. *Henry*, 86 Cal. 471 [25 P. 17]; *Hall* v. *Ferguson*, 8 Cal.App.2d 444, 446 [47 P.2d 1073]; *Ivancovich* v. *Sullivan*, 149 Cal.App.2d 160, 164-166 [307 P.2d 989].) This is a valid and well-established rule. However, it comes into application only where there *has been* a delivery, which implies the intent that it shall become at once operative, either absolutely or conditionally. (*Hotaling* v. *Hotaling*, 193 Cal. 368, 381-383 [224 P. 455, 56 A.L.R. 734]; *Hitch* v. *Hitch*, 24 Cal.App.2d 291, 293 [74 P.2d 1098].) ▓▓▓ Accordingly, while *delivery* of a deed to a grantee is necessarily absolute under the rule laid down in section 1056 of the Civil Code, a question may remain as to whether there has been such a delivery with the intent to transfer title. (*Hitch* v. *Hitch, supra,* at p. 293.) As hereinabove pointed out, the question whether such delivery has taken place is a question of fact involving the intent of the parties, and, in particular, the intent of the grantor. ▓▓▓ Unless the grantor's instructions are only in writing, in which case the effect of the transaction depends upon the true construction of the writing, it is necessary, in ascertaining the grantor's intent, to have recourse to his acts and declarations both before and after his transmission of the deed to the grantee. (*Osborn* v. *Osborn*, 42 Cal.2d 358, 363-364 [267 P.2d 333]; *Williams* v. *Kidd*, 170 Cal. 631, 649-652 [151 P. 1, Ann. Cas. 1916E 703.) ▓▓▓ Adverting to the instant case, the evidence hereinabove discussed supports the conclusion reached by the trial court that decedent, in handing the May 7, 1946, deed to Parkinson, and in permitting him to retain possession thereof, did not do so with the intent to presently transfer title thereby. Under the state of the record the court below was justified in concluding that both parties believed and understood that the deed would be of no effect until recorded, and that the instrument should

---

[9]Civ. Code, § 1056, provides as follows: "A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery is made."

never have any effect as a conveyance unless Parkinson should survive decedent. There was, therefore, no intent that it should become immediately operative, or that it should ever become operative during the life of decedent, or afterwards, unless Parkinson should survive decedent. (See *Kenney* v. *Parks*, 137 Cal. 527 [70 P. 556]; *Hotaling* v. *Hotaling*, *supra*, pp. 381-383.)

### *Did the Trial Court Err in Failing to Make a Finding on the Issue of the Statute of Limitations?*

*Yes.* Appellant's answer raised the affirmative defense of the statute of limitations, asserting that "any action to set aside the deed" is barred by the provisions of sections 336,[10] 337, subdivision 1,[11] 338, subdivision 4,[12] 339, subdivision 1,[13] and 343[14] of the Code of Civil Procedure. The trial court made no findings with respect to this issue.[15] Error is claimed by appellant in the failure to make such findings. We have not been cited any authority, nor have we been able to find any California case, directly holding what statute of limitation applies in an action to set aside a deed or to declare it invalid on the basis of nondelivery. It has been held, however, that ordinarily a suit to set aside and cancel a void instrument is governed by section 343 of the Code of Civil Procedure. (*Zakaessian* v. *Zakaessian*, 70 Cal. App.2d 721, 725 [161 P.2d 677]; *Moss* v. *Moss*, 20 Cal.2d 640, 644-645 [128 P.2d 526, 141 A.L.R. 1422].) Accordingly,

---

[10]§ 336 applies to an action for mesne profits of real property, the period prescribed for the commencement of which is "[w]ithin five years ...."

[11]§ 337, subd. 1, applies to an action upon any contract, obligation, or liability founded upon an instrument in writing, the period prescribed for the commencement of which is "[w]ithin four years ...."

[12]§ 338, subd. 4, applies to an action for relief on the ground of fraud or mistake, the period for the commencement of which is "[w]ithin three years," and the accrual of which is the discovery by the aggrieved party of the facts constituting the fraud or mistake.

[13]§ 339, subd. 1, applies generally to an action upon a contract, obligation, or liability not founded upon an instrument in writing, the period for the commencement of which is "[w]ithin two years ...."

[14]§ 343 provides as follows: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

[15]In fairness to the trial court it must be pointed out that neither side argued or presented points or authorities on the issue of the statute of limitations either in their briefs in the court below, or as otherwise disclosed by the record.

section 343 has been held to be the one applicable in a proceeding to set aside a deed upon the ground of undue influence. (*Trubody* v. *Trubody*, 137 Cal. 172, 174 [69 P. 968]; *Wade* v. *Busby*, 66 Cal.App.2d 700, 702 [152 P.2d 754].) Section 343 has also been held to be the applicable statute in an action to set aside a deed on the basis of the grantor's incompetency (*Boyd* v. *Lancaster*, 56 Cal.App.2d 103, 111 [132 P.2d 214]), and in an action to cancel an instrument because of illegality. (*Moss* v. *Moss, supra*, pp. 644-645.) It has also been held, however, that where the gravamen of the cause of action stated involves fraud or mistake Code of Civil Procedure section 338, subdivision 4, is the statute of limitations applicable and the cause of action is not deemed to have accrued until the discovery of the facts constituting the fraud or mistake. (See *Zakaessian* v. *Zakaessian, supra*, p. 725, where the action was to set aside a deed on the ground it was executed by mistake; and see, *Leeper* v. *Beltrami*, 53 Cal. 2d 195, 207-208 [1 Cal.Rptr. 12, 347 P.2d 12], where it was held that section 338, subd. 4, is applicable where the gravamen of the plaintiff's action is duress on the basis that duress is a species of fraud.)

In the case at bench, the gravamen of petitioner's cause of action is not fraud or mistake. These elements were not pleaded nor found by the trial court; nor is there any evidence in the record upon which a finding of fraud or mistake could be predicated. ▮ The basis of the action in the present case is clearly nondelivery of the deed, as was found by the trial court, and, therefore, the four-year period provided for in section 343 applies. The petition in the instant case, which was filed on December 3, 1959, shows on its face that the deed in question was dated May 7, 1946; that it was recorded on August 26, 1946, and that the decedent died on July 24, 1946. Moreover, the evidence is undisputed that said deed was executed on May 7, 1946, and that it was on said day manually delivered by decedent to Parkinson. Accordingly, the question of delivery turns on whether decedent intended to presently divest herself of title on that day, or at least during her lifetime. Clearly then, the four-year statute would run from either May 7, 1946, or, certainly, no later than July 24, 1946. In the absence, therefore, of circumstances which would toll the statute of limitations, it is clear that there has been a delay of more than 13 years after the accrual of the cause of action. It is likewise apparent that such delay appears both from the face of the petition and the uncontradicted facts,

and, therefore, existing as a matter of law, would not necessitate the making of a finding thereon.

Respondents, however, urge that appellant is estopped to invoke the statute of limitations because he concealed from decedent's heirs his adverse claim under the deed of May 7, 1946, and that under the circumstances shown by the evidence he was guilty of fraud, which fraud was not disclosed until the trial of the petition for his removal. Furthermore, respondents contend that the right to challenge the effect of the deed was vested in Parkinson, as administrator of decedent's estate, and that it was his duty to either take such steps as were appropriate to set it aside, or withdraw as administrator, so that another person could be appointed for that purpose. Such conduct, it is asserted, estops appellant from claiming the bar of the statute of limitations.

It is well settled that the doctrine of estoppel *in pais* is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations. (*Carruth* v. *Fritch*, 36 Cal.2d 426, 433-434 [244 P.2d 702, 24 A.L.R.2d 1403] ; *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684, 689-690 [252 P.2d 649] ; *Regus* v. *Schartkoff*, 156 Cal.App.2d 382, 386-387 [319 P.2d 721].) Apropos to this rule are the following established principles: A person, by his conduct, may be estopped to rely on the statute; where the delay in commencing an action is induced by the conduct of the defendant, it cannot be availed of by him as a defense; one cannot justly or equitably lull his adversary into a false sense of security and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought; actual fraud in the technical sense, bad faith or intent to mislead are not essential to the creation of an estoppel, but it is sufficient that the defendant made misrepresentations or so conducted himself that he misled a party, who acted thereon in good faith, to the extent that such party failed to commence the action within the statutory period; a party has a reasonable time in which to bring his action after the estoppel has expired, not exceeding the period of limitation imposed by the statute for commencing the action; and that whether an estoppel exists —whether the acts, representations or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the

party relied thereon to his prejudice—is a question of fact and not of law. (*Industrial Indem. Co.* v. *Industrial Acc. Com., supra,* pp. 689-690; *Regus* v. *Schartkoff, supra,* pp. 386-387; *Cruise* v. *City & County of San Francisco,* 101 Cal.App. 2d 558, 562 [225 P.2d 988].) ▮ It is also an established principle that in cases of estoppel to plead the statute of limitations, the same rules are applicable, as in cases falling within subdivision 4 of section 338, in determining when the plaintiff discovered or should have discovered the facts giving rise to his cause of action. (*Sears* v. *Rule,* 27 Cal.2d 131, 147 [163 P.2d 443]; *Kimball* v. *Pacific Gas & Elec. Co.,* 220 Cal. 203, 215 [30 P.2d 39].)

▮ In the instant case petitioner did not plead such estoppel in his petition. ▮ As a general rule when estoppel is an element of the cause of action it must be specially pleaded. (*Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256, 266 [200 P.2d 836]; *Fleishbein* v. *Western Auto. Supply Agency,* 19 Cal.App. 2d 424, 427 [65 P.2d 928].) This rule is particularly applicable where a plaintiff relies upon estoppel to avail against a defense which would otherwise appear upon the very face of the complaint. (*Fleishbein* v. *Western Auto. Supply Agency, supra,* at p. 427; *Goorberg* v. *Western Assurance Co.,* 150 Cal. 510, 519 [89 P.130, 119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L.R.A.N.S. 876].) The rule does not apply, however, under the principle that a complaint need not negative or anticipate any defense on the part of the defendant, where estoppel is relied upon by the plaintiff to meet new matter affirmatively pleaded in the answer, or where it is made relevant by a contention raised therein. (*Wilson* v. *Grey,* 49 Cal.App.2d 228, 230-231 [121 P.2d 514]; *Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 210, 213 [155 P. 986]; *First Nat. F. Corp.* v. *Five-O Drilling Co.,* 209 Cal. 569, 576 [289 P. 844]; *Fanning* v. *Yoland Productions, Inc.,* 150 Cal.App.2d 444, 452 [310 P.2d 85]; *Davies* v. *Langin,* 203 Cal.App.2d 579, 583 [21 Cal.Rptr. 682]; Code Civ. Proc., § 462; see 2 Witkin, Cal. Procedure, §§ 548-549, pp. 1546-1548.) ▮ Moreover, an estoppel does not have to be pleaded where the party in whose favor it exists at the time of preparing his pleading is without knowledge that his claim must ultimately rest on it. (*Auto Auction, Inc.* v. *Riding Motors,* 187 Cal.App.2d 693, 698 [10 Cal.Rptr. 110]; *First Nat. F. Corp.* v. *Five-O Drilling Co., supra,* at p. 576; *Guy* v. *Leech,* 47 Cal.App. 704, 708 [190 P. 1067].)

Adverting to the case at bench, it would appear at first blush that the petition, by alleging that the deed in question bore the date of May 7, 1946, and was recorded on August 21, 1946, shows on its face that it is vulnerable to the defense of the statute of limitations, thus requiring that estoppel be specially pleaded in order to avoid the bar of the statute. As already hereinabove discussed, the object of the petition was to remove Parkinson as administrator. As a basis for such removal it alleges, among other things, that Parkinson by virtue of said deed claimed property adversely to the estate and that his removal was necessary in order that the validity of said deed might be determined. The issue as to the validity of the deed was injected in the proceedings by Parkinson's answer, as was the affirmative plea of the statute of limitations. It is apparent from the record that petitioner was not seeking to set the deed aside in his petition and that, accordingly, he was not then acting with knowledge that his claim must ultimately rest upon estoppel. As also pointed out above, the question concerning the validity of the deed, and particularly its delivery, developed as the trial progressed. This issue was finally submitted for the court's determination at the conclusion of the case at the request of and with the consent of the parties. Under the circumstances, the defense of the statute of limitations was likewise before the court, and, in the posture in which the proceedings were then placed, petitioner was entitled, in the light of the foregoing principles, to take advantage of any evidence in the record overcoming such defense by way of estoppel, even though facts in support thereof were not pleaded.

Our immediate inquiry, therefore, is whether there is evidence in the record upon which the court below could predicate findings supporting an estoppel to urge the statute of limitations. Under the state of the record we cannot say that the doctrine of estoppel exists as a matter of law, but we are compelled to the conclusion that whether or not it exists is a factual question. At the threshold there is the salient fact of Parkinson's representative capacity and the fiduciary relationship in which he was acting. As administrator, Parkinson was dutybound to make a full disclosure of the true facts concerning matters vital to the administration of the estate. The circumstances surrounding the execution and purported delivery of said deed were peculiarly known to him. Moreover, as such personal representative, Parkinson was under the duty to marshal the assets of the estate and, if necessary,

to institute actions against parties claiming property belonging to the estate. Needless to say, while in such capacity he could not properly sue himself. Accordingly, it was for the trial court to determine whether Parkinson, in keeping the administration of the estate open for a period in excess of 13 years, was thereby forestalling the institution of any action which would test the validity of the deed, and whether he was thereby lulling the heirs into a sense of security by causing them to believe that the estate was being properly administered. Another circumstance of importance is Parkinson's payment to Carrie Baker, in 1949 and two years before the filing of the inventory, of the sum of $5,000 for whatever interest she and her brother, Fred Baker, who was then deceased, might have in the estate. Whether Parkinson's conduct amounted to a fraudulent concealment so as to toll the statute of limitations was a matter for the trial court, as was the question whether the heirs discovered or should have discovered the facts giving rise to the cause of action which is the subject of the instant case. Accordingly, we hold that the issue of the statute of limitations was properly before the court below and that it should have made findings of fact and conclusions of law thereon.

In view of the conclusions herein reached that the trial court was required to make findings on the issue of the statute of limitations the judgment must be reversed. Accordingly, we need not consider the claimed errors in the language and provisions of the judgment itself. We must, however, point out that in the event judgment is entered herein for respondents, upon the determination of such issue, that certain errors appearing in the present judgment should be avoided. Said judgment states that the deed from decedent to Parkinson was "purportedly" executed. This conclusion is not supported in the findings of the court which are that decedent executed a deed dated May 7, 1946, and that said deed was acknowledged before Gladys E. McCormick, a notary public. The infirmity found by the trial court with respect to said deed was in its nondelivery and not in its execution. The judgment likewise provides that Parkinson "has not now or [sic] at any time had any right, title or interest in and to said property, real or personal, therein referred to" (i.e., the deed in question). It should be noted that decedent died intestate and that Parkinson was one of her heirs at law. Although the deed of May 7, 1946, may be invalid, this does not preclude Parkinson from taking his share as an heir

of decedent. The judgment in question should have provided that Parkinson had no right, title or interest in the property of the estate by virtue of the May 7, 1946, deed, but it should not have attempted to adjudicate the interest that Parkinson might otherwise have in decedent's estate.

The judgment is reversed with directions to the trial court to make its findings on the issue of the statute of limitations; that upon the making of such findings, the Findings of Fact and Conclusions of Law in this action be amended to include such findings and the conclusions of law based thereon; and that thereupon judgment be entered pursuant to all of such findings. The appeal from the "Memorandum Decision" is dismissed. Each party shall bear his own costs on appeal.

Bray, P. J., and Sullivan, J., concurred.